IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIE HAWKINS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CAUSE NO. 2:21-cv-00661-JTM-MBN |
| | § | |
| SEA SUPPORT VENTURES, LLC, and | § | **ADMIRALTY DOCKET 9(h)** |
| M/V MISS ALINE, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION OF MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF PLAINTIFF'S SAFETY EXPERT, MITCHELL S. STOLLER**

Plaintiff Willie Hawkins files this Memorandum in Opposition of Motion in Limine to Exclude the Opinions of Plaintiff's Safety Expert, Mitchell S. Stoller. The Court should deny Defendants' Motion in Limine for the following non-exhaustive reasons:

- The OSHA standards and AWO guidelines are not used to here to establish negligence *per se* or an applicable regulatory violation. Rather they are indicative of the relevant standard of care and are evidence of negligence on the part of the Defendants;

- Captain Stoller's opinions concern a unique industry well outside the bounds of the average layperson's experience and understanding and he relies on his decades of experience and practice within the industry in reaching his conclusions;

- Captain Stoller's critique of Defendants' failure to conduct meaningful hazard analysis goes far beyond Defendants' glancing portrayal and far beyond a mere JSA;

- It is not impermissible speculation to say that it is unclear what safety training Defendants provide. Rather, it is a damning reflection on the lack of adequate safety training practices and protocols; and

- Defendants conflate rendering legal conclusions and opining on and drawing conclusions from the evidence on what would be ultimate issues for the factfinder. The former is forbidden but the latter is permissible. Captain Stoller is not merely telling the fact finder what result to reach. Accordingly, his testimony does not run afoul of Rule 704 or any other.

## I.
## EVIDENCE IN SUPPORT

Plaintiff cites to and incorporates the following evidence in support of his Memorandum in Opposition of Motion in Limine to Exclude the Opinions of Plaintiff's Safety Expert, Mitchell S. Stoller:

**Exhibit A:** Report of Captain Mitchell Stoller;

**Exhibit B:** Report of Robert E. Borison;

**Exhibit C:** Affidavit of Captain Mitchell Stoller;

**Exhibit D:** Prevention Through People Report; and

**Exhibit E:** Example JSA from the M/V MISS ALINE.

## II.
## BACKGROUND

This suit arises out of the injuries sustained by Plaintiff while employed by Defendant Sea Support as a seaman aboard the M/V MISS ALINE. Specifically, on or about September 13, 2020, the M/V MISS ALINE was off the coast of Freeport, Texas, performing lightering duties. In the early morning, Plaintiff was moving equipment—specifically at the time carrying two chocks--back into its designated place on the back deck when his foot slipped into a trough surrounding the oil tank the deck winch sits on. This resulted in Plaintiff twisting and severely injuring his knee—an injury which has, to date, twice required surgical intervention.

At issue presently is Defendants' Motion in Limine to Exclude the Opinions of Plaintiff's Safety Expert, Mitchell S. Stoller. Defendants' motion relies on five critique of Captain Stoller's

report. First, Defendants argue that the OSHA regulations and AWO guidelines referenced by Captain Stoller are inapplicable to a Coast Guard inspected vessel. Second, that Captain Stoller's opinions are not bona-fide expert opinions and that this case presents no issues outside of the common understanding and knowledge of an ordinary juror. Next, Defendants argue that Captain Stoller should be excluded because Plaintiff testified that they conducted a JSA and that this somehow invalidates Captain Stoller's critiques regarding a proper hazard analysis. Fourth, Defendants accuse Captain Stoller of pure speculation as to the adequacy of Defendants' training policies and procedures. Finally, Defendants assert that Captain Stoller is impermissibly providing legal conclusions in his report. Each of these arguments, however, misses their mark and may be summarily disposed.

Captain Stoller does not invoke the OSHA standards or American Waterway Operator (AWO) guidelines to suggest some sort of violation of regulatory law or to show that the vessel failed to pass a Coast Guard inspection. Nor are they being utilized to establish negligence *per se*. Rather, these standards and guidelines are used to illustrate applicable safety considerations within the maritime industry. That is to say, they serve to elucidate the relevant standard of care and are evidence of Defendants' negligence. Evidence the trier of fact—in this case, the Court—is free to accept or reject. Moreover, Defendants' own liability expert, Mr. Bob Borison, admits in his report that OSHA standards are relevant and can be applied to a Coast Guard inspected vessel.[1]

Defendants' next argument essentially asserts that Captain Stoller will be of no use to trier of fact because he allegedly offers nothing beyond that which the jury could assess using only common experience and knowledge. In arguing this point, Defendants must attempt to boil the issues down to their most basic form to try to squeeze out some viability. They assert that this case

---

[1] *See* Exhibit B at p. 6.

3

is about nothing more than the deck and the task of moving objects aboard the deck. This, however, is an oversimplification to the point where it obfuscates key issues. Though the fact finder in this case is the Court, and although the Court, through the sheer nature of its docket, has a greater familiarity with maritime issues, the insight of a maritime professional with decades of experience will still prove useful. This case is not just about decking, but the layout and configuration of decking aboard a working supply vessel and the hazards that may be inherent in the layouts chosen. It is about the hazards and unique command structures that exist and are unique to the maritime industry. More to the point, Defendants' complaint here is largely nothing more than a straw-man argument. Defendants would paint Captain Stoller's report as one simply stating that the condition aboard the M/V MISS ALINE was a hazard. While Captain Stoller shares this opinion with the majority of the crew and captains of the M/V MISS ALINE, his report is far more nuanced. Captain Stoller criticizes the master aboard the vessel and the designated person ashore for failing in their safety related duties.[2] Captain Stoller criticizes Defendants for failing to conduct a meaningful hazard analysis as understood in the maritime industry.[3] He even points out that Defendants failed to follow through on their own JSA which requires them to "identify and shield uneven working surfaces or projections."[4] Captain Stoller goes on to criticize the training program, or, more specifically, the seeming lack thereof, which Defendants utilized.[5] What Captain Stoller offers is a detailed look into the relevant safety practices in the maritime industry and how they apply in this case. This is far from what Defendants suggest—that he merely points out an issue and calls it a hazard.

---

[2] *See* Exhibit A at p. 9.
[3] *See id*. at p. 9–13.
[4] *Id*. at p. 9.
[5] *See id*. at 14.

4

In their third issue, Defendants assert that Captain Stoller's opinion about the lack of a meaningful hazard analysis is false because a JSA was performed aboard the vessel. This argument similarly fails. Most notably, it is not altogether clear that what happened aboard the vessel is anything akin to the types of hazard analysis program that Captain Stoller describes in his report. At its most obvious, the JSA Defendants supposedly rely on says that they were supposed to identify and shield uneven working surfaces. It seems altogether clear that Defendants have failed to even live up to their own JSA, let alone the type of hazard analysis involving a coordinated effort between the officers of the vessel and shoreside personnel that Captain Stoller articulates.

Defendants then accuse Captain Stoller of impermissible speculation regarding safety training. Defendants rely on a single sentence in isolation to make this argument. As part of his multi-page critique of proper hazard analysis and safety training, Captain Stoller says, "[b]ased on the evidence provided to me it is unclear the types of safety training they received from Sea Support Ventures on a monthly basis."[6] Defendants would take this sentence out of context to argue that his entire critique is based on speculation. In reality, Captain Stoller takes pages to describe what a property hazard identification and safety training program would look like, one that involves a multi-faceted approach that requires coordination between the master of the vessel and shoreside personnel. This sentence, which Defendants have seemingly plucked out, is not an admission of speculation. Rather it is a damning indictment of how the record fails to reflect that Plaintiff or any of the members of the vessel received anything resembling the sort of training Captain Stoller opines is necessary and standard in the maritime industry.

Finally, Defendants assert that Captain Stoller is providing impermissible legal conclusions. In doing so Defendants conflate an expert rendering legal conclusions and an expert

---

[6] Exhibit A at p. 14.

synthesizing facts and evidence with their training, experience, and education to opine on key or even ultimate issues in the case. Defendants admit that the conclusions they reference use non-legal terms but maintain that they remain legal conclusions. The complained of conclusions are as follows:

- "Given the information provided to me, it is my expert opinion that Sea Support Ventures failed to ensure compliance with safety standards of the maritime industry and **fell below the standard of care**."

- "The failure of Sea Support Ventures owners, managers, employees and M/V Miss Aline's crew to adhere to their responsibilities and policies constitute breaches of the safe customs and practices of the maritime field and maritime industry standards of care. **These failures were a substantial factor in creating the unsafe work environment that led to the injury sustained by Mr. Hawkins**."

- "Sea Support Ventures failure to carry out their responsibilities violates the safe customs and practices of the maritime industry, federal regulations, and industry standards. These failures created an unsafe work environment that **unnecessarily led to Mr. Hawkin's injury**."

- "These failures created the unsafe work conditions that led to Mr. Hawkin's slip, trip and fall injury."

(Doc. 31-1) (Original emphasis included). There is no *per se* rule against testimony regarding ultimate issues of fact. Rather the rule merely excludes allowing a witness to give legal conclusions that merely allow the witness to the tell the jury what result to reach. Admittedly, the Fifth Circuit has long recognized that the distinction between the two types is not any easy one to draw. The opinions at issue here, however, when taken in the context of the review of the facts, evidence, and material relied on by Captain Stoller, show that he is not merely offering legal conclusions. He is supplying the information beyond merely his view of how the verdict should be read. For example, Captain Stoller goes to great lengths laying out the relevant maritime standards and then opines that Defendants failed to live up to those standards. This is a permissible opinion regarding an ultimate issue, not an impermissible legal conclusion. More fundamentally, the concern about a

witness being able to testify as to potential legal conclusions is dramatically lessened by the fact that this case will be tried to the bench. The worry with an expert testifying as to legal conclusions is that a jury could be swayed by a court-approved expert simply telling them how to rule. Under present circumstances, there is no cause for concern that the Court will somehow be duped by Captain Stoller being admitted to testify as an expert witness and rule according to his opinions merely because he is an expert and testifies as so.

Accordingly, Plaintiff asks that the Court deny Defendants' Motion in Limine to Exclude Captain Stoller. Each of the arguments proffered fails to hit its mark. Captain Stoller has decades of experience in the maritime industry which he can utilize to aid the Court in understanding maritime standards and practices relevant to this case.

### III.
### ARGUMENTS AND AUTHORITIES

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 as well as *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 59 (1993) and its progeny. The *Daubert* court assigns a gatekeeping role to the trial court to ensure that all expert testimony is of a scientific nature which is both reliable and relevant. *See Daubert*, 509 U.S. at 597; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The courts enjoy a wide discretion in exercising this duty. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).

The Federal Rules of Evidence provide that a witness "'qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702). The reliability inquiry focuses on an expert's principles and methodology and mandates that the opinions be grounded in methods and

procedures of science and be more than unsupported speculation or subjective belief. *See Daubert*, 509 U.S. at 594; *Johnson*, 685 F.3d at 459. In conducting said inquiry, the courts are to consider certain factors, such as whether a theory or technique has been tested, whether the theory or technique has been subjected to peer review and publication, the known or potential rate of error, the existence and maintenance of standards, and the general acceptance of a theory in the relevant scientific community. *Daubert*, 509 U.S. at 593–94; *Kuhmo Tire*, 526 U.S. at 150. Once the admissibility of an expert's testimony is challenged, it falls to the party seeking to admit such testimony to prove that the testimony is reliable by a preponderance of the evidence. *See Johnson*, 685 F.3d at 459. Expert opinions which are fundamentally unsupported—those which have such little weight that they "would not actually assist the jury in arriving at an intelligent and sound verdict"—having nothing to offer to the jury and ought to be excluded. *See Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (commenting further that such testimony may be more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403).

A. ***The OSHA standards and AWO guidelines referenced by Captain Stoller are not used to establish negligence per se or an applicable regulatory violation. Rather they are indicative of the relevant standard of care and are evidence of negligence on the part of Defendants.***

The Fifth Circuit has long recognized that testimony regarding regulatory and safety standards within the maritime industry may be relevant to the issue of negligence and should be admitted. *See Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 (5th Cir. 1981). Crucially, this remains true even if they cannot be used to establish negligence *per se*. *See id*. at 713, n. 22 ("A plaintiff may offer a statute or regulation as evidence of a defendant's negligence even with the statute or regulation cannot be used to establish negligence *per se*."). The regulations or statutes may be used as evidence of negligence, which the trier of fact is free to accept or reject. *See id*.

Captain Stoller does not invoke the OSHA standards or AWO guidelines to suggest some regulatory violation or to say that the vessel did not pass inspection. Nor are they being utilized to establish negligence *per se*. Rather, these standards and guidelines are used to illustrate applicable safety considerations within the maritime industry. That is to say, they serve to elucidate the relevant standard of care and are evidence of Defendants' negligence. Evidence the trier of fact—in this case, the Court—is free to accept or reject. These standards are also part of the larger picture that Captain Stoller paints with regard to maritime standards. He also uses the ISM Code, documentation from major international maritime insurance companies, and certain policies and procedures from one of the world's largest shipping companies, Exxon Shipping Company.[7] Captain Stoller was a member of the Quality Action Team which developed the Prevention Through People ("PTP") program for the U.S. Coast Guard in 1995.[8] The PTP program focuses on creating an encompassing, systematic approach to reduce human-error-related loss of life, injury, and pollution.[9] In particular the PTP program studied the policies and practices of safety leaders in the industry, including Dow, Chevron, and Mobil, and identified certain company management strategies that are particularly effective at reducing risks.[10] Arguably the most important of which is to "[g]o beyond regulations and strive for excellence."[11] Coast Guard regulations for the inspection of the vessel are and should be the bare minimum for a company's safety practices.[12] The Coast Guard regulations set the floor for a vessel but the standard of care as for safety policies and protocols has risen far above that baseline.[13] The PTP recognized this fact by noting that the industry and governments had already been working towards improving

---

[7] *See* Exhibit A.
[8] *See* Exhibit C.
[9] *See* Exhibit D at p. 2.
[10] *See id.* at p. 10.
[11] *Id.*; Exhibit C.
[12] *See* Exhibit C.
[13] *See id.*

9

vessels but efforts to address human-related safety issues had been lacking—hence the development and implementation of the PTP.[14]

Moreover, Defendants' own liability expert, Mr. Bob Borison, admits in his report that OSHA standards are relevant and can be applied to a Coast Guard inspected vessel.[15] Mr. Borison focuses solely on the question of whether the M/V MISS ALINE passed its Coast Guard inspection. He admits that OSHA standards can be applied by Coast Guard Inspectors even for the purposes of an inspection if there is a gap in the Coast Guard's codes. Of course, as argued in Plaintiff's Motion to Strike Mr. Borison, he makes assumptions about the mental states of inspectors and makes the leap from the OSHA standards not being mentioned in any of the inspections to the conclusion that there was no issue aboard the M/V MISS ALINE. Even if one were to credit the argument as to the inspection of the vessel, it does not follow that mere compliance with inspection requirements means that Defendants lived up to the relevant standard of care. Crucially, no where in his report does Mr. Borison state that a company meets the standard of care or would be in compliance with industry practices just by merely providing a vessel which passes inspection. Again, this is the bare minimum and, even in that, Defendants' experts admits that OSHA standards can be relevant. This is a far cry from the outright rejection Defendants seek in their limine.

B. ***Captain Stoller's opinions concern a unique industry well outside the bounds of the average layperson's experience and understanding and he relies on his decades of experience and practice within the industry in reaching his conclusions.***

Defendants next argue that Captain Stoller has nothing to offer beyond the common experience and knowledge of the average factfinder. This argument is essentially an invocation of Rule 702's requirement that the proffered testimony be of assistance to the trier of fact. *See* Fed.

---

[14] *See* Exhibit D at p. 6.
[15] *See* Exhibit B at p. 6.

R. Evid. 702. In that vein, a court can exclude testimony if a jury could adeptly assess the situation using only their common experience and knowledge. *See Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990). Though the fact finder in this case is the Court, and although the Court, through the sheer nature of its docket, has a greater familiarity with maritime issues, the insight of a maritime professional with decades of experience, such as Captain Stoller, will still prove useful in analyzing the issues.

Contrary to Defendants' oversimplification, this case and Captain Stoller's testimony is about more than the deck of the M/V MISS ALINE and the task of moving objects aboard the deck. Nor does Captain Stoller's testimony amount to the simple opinion that the condition of the channel surrounding the deck winch constituted a hazard. This is an opinion held by Captain Stoller—and seemingly the vast majority of the captains and crew of the M/V MISS ALINE—but is hardly the thrust of his testimony and report. His opinion is far more nuanced. Captain Stoller criticizes the master aboard the vessel and the designated person ashore for failing in their safety related duties.[16] Captain Stoller criticizes Defendants for failing to conduct a meaningful hazard analysis as understood in the maritime industry.[17] He even points out that Defendants failed to follow through on their own JSA which requires them to "identify and shield uneven working surfaces or projections."[18] Captain Stoller goes on to criticize the training program, or, more specifically, the seeming lack thereof, which Defendants utilized.[19] What Captain Stoller offers is a detailed look into the relevant safety practices in the maritime industry and how they apply in this case. This is far from what Defendants suggest—that he merely points out an issue and calls it a hazard.

---

[16] *See* Exhibit A at p. 9.
[17] *See id*. at p. 9–13.
[18] Exhibit A at p. 9.
[19] *See id*. at 14.

**C.** *Captain Stoller's critique of Defendants' failure to conduct meaningful hazard analysis goes far beyond Defendants' glancing portrayal and far beyond a mere JSA.*

In their third issue, Defendants assert that Captain Stoller's opinion about the lack of a meaningful hazard analysis is false because a JSA was performed aboard the vessel. This argument similarly fails. Captain Stoller's report, testimony, and opinions focus on a multi-faceted approach to hazard identification and mitigation—of the kind embodied in the PTP discussed above.[20] A proper safety management analysis would involve a coordinated effort between the officers of the vessel and shoreside personnel that focuses on an active, participatory hazard analysis that goes beyond the bare minimum regulatory requirements.[21] There is no indication that anything of this sort took place aboard the M/V MISS ALINE. The rote, formulaic sign-off of a JSA does not even begin to capture the sort of analysis and prevention efforts that are required.[22] Crucially, it would seem that Defendants failed to even live up to the minimal requirements of their own JSA. Defendants' form JSA, under the section entitled "Slips, Trips, and Falls," requires them to "identify and shield uneven surfaces or projections."[23] Merely having a JSA is meaningless if there is no actual effort put into it. Defendants reliance on a JSA they do not appear to have taken seriously is misplaced.

**D.** *It is not impermissible speculation to say that it is unclear what safety training Defendants provide. Rather, it is a damning reflection on the lack of adequate safety training practices and protocols.*

Defendants fourth argument is that Captain Stoller has engaged in impermissible speculation regarding Defendants' safety training. Defendants rely on a single sentence in isolation to make this argument. As part of his multi-page critique of proper hazard analysis and safety

---

[20] *See* Exhibit C; Exhibit D.
[21] *See* Exhibit C.
[22] *See id.*
[23] *See* Exhibit E.

training, Captain Stoller says, "[b]ased on the evidence provided to me it is unclear the types of safety training they received from Sea Support Ventures on a monthly basis."[24] Defendants would take this sentence out of context to argue that his entire critique is based on speculation. In reality, Captain Stoller takes pages to describe what a property hazard identification and safety training program would look like, one that involves a multi-faceted approach that requires coordination between the master of the vessel and shoreside personnel. This sentence, which Defendants have seemingly plucked out, is not an admission of speculation. Rather it is a damning indictment of how the record fails to reflect that Plaintiff or any of the members of the vessel received anything resembling the sort of training Captain Stoller opines is necessary and standard in the maritime industry.

Defendants' argument here seems particularly odd. The lack of evidence in this case about proper training systems and protocols should hardly be seen as a saving grace. Captain Stoller reviewed Defendants' safety manual and the depositions of the captains and crew of the M/V MISS ALINE. His conclusion is that there is no indication that Defendants have developed the kind of safety and hazard identification program required.[25] In fact, there seems to be a complete dearth of adequate safety training.[26] Defendants would transform a stylistic writing choice into an admission of pure speculation. When Captain Stoller says "it is unclear the types of safety training received" he is not saying he is merely guessing. He is saying that the evidence in this case reveals that little adequate training took place, if any.[27]

---

[24] Exhibit A at p. 14.
[25] *See* Exhibit C.
[26] *See* Exhibit C.
[27] *See id.*

13

> **E.** *Defendants conflate rendering legal conclusions and opining on and drawing conclusions from the evidence on what would be ultimate issues for the factfinder. The former is forbidden but the latter is permissible. Captain Stoller is not merely telling the fact finder what result to reach. Accordingly, his testimony does not run afoul of Rule 704 or any other.*

Finally, Defendants assert that Captain Stoller is providing impermissible legal conclusions. In doing so Defendants conflate an expert rendering legal conclusions and an expert synthesizing facts and evidence with their training, experience, and education to opine on key or even ultimate issues in the case. Defendants admit that the conclusions they reference use non-legal terms but maintain that they remain legal conclusions. The complained of conclusions are as follows:

- "Given the information provided to me, it is my expert opinion that Sea Support Ventures failed to ensure compliance with safety standards of the maritime industry and **fell below the standard of care**."

- "The failure of Sea Support Ventures owners, managers, employees and M/V Miss Aline's crew to adhere to their responsibilities and policies constitute breaches of the safe customs and practices of the maritime field and maritime industry standards of care. **These failures were a substantial factor in creating the unsafe work environment that led to the injury sustained by Mr. Hawkins**."

- "Sea Support Ventures failure to carry out their responsibilities violates the safe customs and practices of the maritime industry, federal regulations, and industry standards. These failures created an unsafe work environment that **unnecessarily led to Mr. Hawkin's injury**."

- "These failures created the unsafe work conditions that led to Mr. Hawkin's slip, trip and fall injury."

(Doc. 31-1) (Original emphasis included).

Fed. R. Evid. 704 abolished the old *per se* rule against testimony regarding ultimate issues. *See* Fed. R. Evid. 704; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239 (5th Cir. 1983). The rule does not, however, admit all opinions as a witness is not allowed to give legal conclusions or merely tell the jury what result to reach. *See Owen*, 698 F.2d at 240 (citing *United States v. Fogg*,

652 F.2d 551, 557 (5th Cir. 1981), *cert. denied*, 456 U.S. 905, 102 S. Ct. 1751, 72 L. Ed. 2d 162 (1982); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)). Admittedly, the Fifth Circuit has long recognized that the distinction between the two types is not any easy one to draw. *See id*. The Fifth Circuit did, however, provide an illustrative example of the distinction.

> The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read.

*Id*.

The opinions at issue here, however, when taken in the context of the review of the facts, evidence, and material relied on by Captain Stoller, show that he is not merely offering legal conclusions. He is supplying information beyond merely his view of how the verdict should be read. For example, Captain Stoller goes to great lengths laying out the relevant maritime standards and then opines that Defendants failed to live up to those standards. This is a permissible opinion regarding an ultimate issue, not an impermissible legal conclusion.

More fundamentally, the concern about a witness being able to testify as to potential legal conclusions is dramatically lessened by the fact that this case will be tried to the bench. The worry with an expert testifying as to legal conclusions is that a jury could be swayed by a court-approved expert simply telling them how to rule. The notes to Rule 704 specifically discuss that the rule is aimed at providing testimony which will be helpful to the trier of fact. Under present circumstances, there is no cause for concern that the Court will somehow merely go along with Captain Stoller simply because he is designated as an expert. Of note, the Fifth Circuit has recognized that most of the *Daubert* safeguards are designed with a *jury* in mind and that they are

not as essential in a bench trial where the judge sits as the trier of fact. *See Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). In fact, Plaintiff proposed to Defendants pulling down all *Daubert* challenges to experts because this is to be bench trial. This proposal was, however, rejected, forcing Plaintiff to move forward with his challenges and his response to Defendants' limine as to Captain Stoller.

## IV.
## CONCLUSION & PRAYER

Based on the foregoing, Plaintiff prays that Defendants' Motion in Limine to Exclude the Opinions of Plaintiff's Safety Expert, Mitchell S. Stoller be denied. Plaintiff asks for this as well as all such other and further relief to which the Court deems him justly entitled.

    Respectfully submitted,

**PIERCE SKRABANEK, PLLC**

*/s/ Kyle W. Chapel*
_____
M. Paul Skrabanek
Bar Roll No. 34980
Michael E. Pierce (*admitted Pro Hac Vice*)
Texas Bar No. 24039117
Kyle W. Chapel (*admitted Pro Hac Vice*)
Texas Bar No. 24116188
3701 Kirby Drive, Suite 760
Houston, TX 77098
Telephone: (832) 690-7000
Facsimile: (832) 616-5576

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 23, 2022, a true and correct copy of this motion was served on all counsel of record by uploading same to the Court's CM/ECF System.

*/s/ Kyle W. Chapel*
KYLE W. CHAPEL